### Staunton

PURNELL STURGIS V. COMMONWEALTH OF VIRGINIA.

September 14, 1955.

Present, All the Justices.

Record No. 4407.

Present, All the Justices.

The opinion states the case.

*William King Mapp*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *R. D. McIl-waine, III, Assistant Attorney General,* for the Commonwealth.

E͏GGLESTON, J., delivered the opinion of the court.

This case is before us on a writ of error to a judgment entered upon a jury's verdict convicting Purnell Sturgis of the transportation of illegally acquired alcoholic beverages in violation of Code, § 4-75,[1] and fixing his punishment at sixty days in jail. The assignments of error challenge the sufficiency of the evidence to sustain the verdict and the court's rulings on the admission of certain evidence.

On the night of June 27, 1954, Wayne J. Fincen, a member of the Virginia State Police, and Arthur B. Nicolls, a deputy sheriff, were patrolling the road leading from Painter to Mappsburg, in Accomack county, on the lookout for the defendant, Sturgis, who, according to their information, was engaged in the transportation of "illegal whiskey." Shortly after 9:00 o'clock the officers overtook the defendant in his car and ordered him to stop. The defendant obeyed this command, but before the officers reached his car he started it and left the scene at a high rate of speed. While pursuing the defendant along a hard-surfaced road at a rapid rate of speed the officers saw him throw from the car a bottle or jug which broke when it struck the pavement. Shortly thereafter the defendant pulled off the road, abandoned his car, and made his escape. The following day he voluntarily surrendered to the authorities.

Soon after the defendant had abandoned his car and escaped, Officer Fincen returned to the place where he and Nicolls had seen the object thrown from the car. There Fincen found pieces of a broken bottle, still wet, which he said "reeked with the smell of bootleg whiskey." He also found on the pavement a spot, which he described as being "twice as big" as a table in the courtroom, where the liquid had spilled on the pavement. By its odor, which Fincen described as being "very strong," he positively identified the liquid as "bootleg whiskey."

In a few minutes Nicolls, who had remained with the defendant's abandoned car, arrived and examined the scene where the container

---

[1] The amendment to the section by Acts 1954, ch. 484, p. 579, became effective after the date of the alleged violation.

had broken on the pavement. Nicolls testified that for a number of years he had been employed by the State Alcoholic Beverage Control Board and had had "much experience in dealing with alcoholic beverages—bootleg and otherwise." By its odor, he said, he "knew" that the liquid which he found on the pavement was "bootleg whiskey." He found the neck of the broken container from which he was able to identify it as "a gallon coca-cola jug."

Both officers examined the broken pieces of the receptacle to determine whether it had carried "any Federal stamps." They found none.

The defendant admitted that he had been chased by the officers on the occasion and had successfully eluded them. He denied, however, that at the time he was transporting any intoxicating liquor or had thrown the container from the car as described by the officers. He said that he fled from the officers because he had had several drinks that evening and feared that they might detect the odor of whiskey on his breath and charge him with driving under the influence of liquor.

The pertinent part of Code, § 4-75, in effect at the time of the alleged offense, read thus:

"If any person, other than a common carrier, shall have, possess, keep, carry, ship or transport alcoholic beverages which have been illegally acquired by such person or any person for whom he is acting, he shall be guilty of a misdemeanor.

"Spirits in the possession of any person and in containers not bearing the required government stamps or seals shall be deemed for the purposes of this chapter to have been illegally acquired."

■ To sustain its charge against the defendant under this section, the burden was on the Commonwealth to prove beyond a reasonable doubt that at the time in question he was (1) transporting alcoholic beverages, and (2) that they had been "illegally acquired" by him. We are of opinion that the evidence was sufficient to warrant the finding that the prosecution had carried this burden.

It is undisputed that at the time the defendant was the sole occupant of the car. According to the testimony of the officers, while they were chasing him he threw from the car a container which broke and spilled on the pavement a liquid which they clearly and positively identified by its odor as being "bootleg whiskey." Hence, the evidence is sufficient to sustain a finding that the defendant was transporting an alcoholic beverage.

The second paragraph of Code, § 4-75, provides a rule of evidence for proof of illegal acquisition. (*Miller* v. *Commonwealth*, 172 Va. 639, 646, 2 S. E. (2d) 343, 346.) Under its terms, proof of possession "in containers not bearing the required government stamps or seals shall be deemed * * * to have been illegally acquired" within the meaning of the section.

We are of opinion that the jury were warranted in finding from the testimony of the officers that the whiskey which the defendant had in his possession was in a container which bore no "government stamps." The whiskey was, therefore, presumed "to have been illegally acquired." While the presumption of illegal acquisition flowing from the absence of government stamps was rebuttable, unless rebutted it prevailed over the presumption of innocence and was sufficient to sustain a conviction of guilt. *Miller* v. *Commonwealth, supra* (172 Va., at page 653, 2 S. E. (2d), at page 349); *Smith* v. *Commonwealth*, 182 Va. 585, 592, 30 S. E. (2d) 26, 28, 153 A. L. R. 1150.

The defendant introduced no evidence that the whiskey had been legally acquired. On the contrary, he staked his entire defense on a denial that he had any intoxicating liquor in his car or that he had thrown any object out of the car during the course of his flight. Thus the evidence of the Commonwealth, standing alone, with no evidence to the contrary, was sufficient to prove illegal acquisition. See *Powers* v. *Commonwealth*, 182 Va. 669, 674, 30 S. E. (2d) 22, 24.

At the beginning of his testimony Officer Fincen was asked by the attorney for the Commonwealth why he and Deputy Sheriff Nicolls were patrolling the highway on the night in question. His reply was, "Mr. Nicolls had received some information that Purnell Sturgis was hauling some illegal whiskey in the vicinity of Painter." Counsel for the defendant objected to this evidence on the ground that it was hearsay. In overruling the objection the court said: "He has a right to say that he was looking for him for a violation of the law, for which he was later charged. I understand that is what you were doing—trying to apprehend this man."

Clearly we think this testimony of the officer was inadmissible and prejudicial to the defendant. It was pure hearsay. It conveyed to the jury the information that these officers had been told by other persons that the defendant was or had been engaged in the very illegal act for which he was then being tried, namely, "hauling some

illegal whiskey." In overruling the objection the trial court told the jury that the officer had the right to say "that he was looking for him for a violation of the law, for which he was later charged." Thus it emphasized the force and effect of such inadmissible evidence.

During his examination in chief, counsel for the defendant sought to show that as a result of the episode the defendant was charged with reckless driving as well as the offense of transporting illegal whiskey. On objection by the Commonwealth's attorney the court properly ruled that the charge of reckless driving was immaterial to the charge upon which the defendant was then being tried.

Despite this ruling the Commonwealth's attorney, over the objection of the defendant, was later permitted to cross-examine the defendant at length as to his reckless manner of driving in his effort to escape the officers. Moreover, both officers were recalled to the stand and upon examination by the Commonwealth's attorney testified as to the reckless driving of the defendant and the fact that he had narrowly avoided a collision with another car at an intersection.

It is true as the Attorney General argues, that evidence that the accused had fled to avoid arrest is admissible as tending to show consciousness of guilt on his part. *Bowie* v. *Commonwealth*, 184 Va. 381, 392, 35 S. E. (2d) 345, 350, and authorities there cited. But here the evidence brought out by the prosecution went far beyond this. It tended to show not only that the defendant had fled to escape arrest, but also that he had been guilty of reckless driving, a distinct and separate offense from that for which he was then being tried. Such evidence of reckless driving, beyond the showing of the effort to escape, was immaterial to the charge of illegal transportation of liquor. Moreover, it was prejudicial to the defendant in that it showed that he was a violator of the law in other respects. See *Walker* v. *Commonwealth*, 1 Leigh (28 Va.) 574, 580; *Day* v. *Commonwealth*, 196 Va. 907, 912, 913, 86 S. E. (2d) 23, 25, 26.

Because of the improper admission of the evidence referred to, the judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*