**FABICK AND COMPANY, a corporation, Appellant,**

v.

**James E. SCHAFFNER, Director of Revenue, State of Missouri, et al., Respondents.**

**No. 57795.**

Supreme Court of Missouri, Division 1.

April 9, 1973.

---

1. Chapter 533, RSMo 1969, V.A.M.S.

---

John H. Hendren, Kelly Pool, Hendren and Andrae, Jefferson City, for appellant.

John C. Danforth, Atty. Gen., Peter H. Ruger, Asst. Atty. Gen., Jefferson City, for respondents, James E. Schaffner, Director of Revenue, State of Mo., and John C. Danforth, Atty. Gen. of the State of Mo.

James P. Dalton, City Atty., Cullen Coil, Sp. Atty., Jefferson City, for respondents, the City of Jefferson, John G. Christy, Mayor of Jefferson City, and Ed Cole, City Collector of Jefferson City.

Robert C. Jones, Ziercher, Tzinberg, Human & Michenfelder, Clayton, for Missouri Municipal League, amicus curiae.

WELBORN, Commissioner.

Appeal from judgment in declaratory judgment action for determination of applicability of Jefferson City sales tax to transactions engaged in by Fabick and Company. The judgment of the trial court was adverse to Fabick and Company.

In 1969, the General Assembly enacted the "City Sales Tax Act." §§ 94.500–94.570, RSMo 1969, V.A.M.S. Pursuant to § 94.-510, an election was held in Jefferson City at which the voters authorized the city council to impose such tax and the council enacted an ordinance for that purpose. The question here presented is the applicability of such tax to transactions involving incidents which occur beyond the city limits of the City of Jefferson.

Fabick and Company is engaged in the business of selling, servicing, repairing and leasing heavy construction equipment, machinery and parts. Its office is located in Jefferson City. Salesmen working from and out of that office solicit business from customers within and beyond the corporate limits of Jefferson City. All purchase orders or sales contracts entered into between such salesmen and customers are required to be accepted by Fabick and Company at its office in Jefferson City. All billing is from the Jefferson City office and payment is required to be made at such office unless Fabick and Company directs that payment be made to its assignee.

The transactions concerning which the controversy over the applicability of the city sales tax arose are those in which the equipment sold or leased or the parts sold are to be delivered from Fabick's place of business in Jefferson City to customers at points in Missouri outside the corporate limits of Jefferson City, when the subject of the transaction was to be delivered by Fabick from a point in Missouri outside the corporate limits of Jefferson City to another such point in Missouri, and when the subject of the transaction was to be delivered by Fabick from a point outside the State of Missouri to a customer in the State of Missouri, either within or beyond the corporate limits of Jefferson City.

The trial court held that Fabick was required to collect from the purchaser and remit the city sales tax "on all retail sales made at or out of its place of business in Jefferson City including sales made by any

employee of plaintiff, irrespective of the location of the purchaser except in those instances in which the tangible personal property sold by plaintiff is delivered by plaintiff or its agent to an out-of-state destination, or to a common carrier for delivery to an out-of-state destination."

Appellant attacks that judgment on the ground that it requires collection and payment of the city sales tax in transactions not subject to tax under the City Sales Tax Act and the ordinance enacted pursuant thereto, and on the further ground that it purports to authorize Jefferson City to impose and collect a tax arising out of transactions beyond its jurisdiction to tax.

The ordinance adopted by Jefferson City in imposing a city sales tax provides:

"Section 1. *Imposition of city sales tax.* Pursuant to the authority granted by and subject to the provisions of House Committee Substitute for House Bill 243, passed by the 75th General Assembly of the State of Missouri, a tax for general revenue purposes is hereby imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable services at retail to the extent and in the manner provided in Sections 144.010 to 144.510, R.S.Mo., and the rules and regulations of the director of revenue issued pursuant thereto. The rate of the tax shall be one (1%) per cent on the receipts from the sale at retail of all tangible personal property or taxable services at retail within the City of Jefferson, Missouri, if such property and services are subject to taxation by the State of Missouri under the provisions of Sections 144.010 to 144.510, R.S.Mo. The tax shall become effective as provided in subsection 4 of section 2 of House Committee Substitute for House Bill 243 and shall be collected as provided in said House Committee Substitute for House Bill No. 243."

H.C.S.H.B. 243, 75th General Assembly, is the "City Sales Tax Act," found in §§ 94.500 to 94.570, RSMo 1969, V.A.M.S. The reference in the ordinance to §§ 144.010 to 144.510, RSMo (1969), V.A.M.S., is to the Missouri "Sales Tax Law."

The language of the Jefferson City ordinance follows the provision of § 94.510 2., which reads:

"2. The sales tax may be imposed at a rate of one-half of one percent or at one percent on the receipts from the sale at retail of all tangible personal property or taxable services at retail within any city adopting such tax, if such property and services are subject to taxation by the state of Missouri under the provisions of sections 144.010 to 144.510, RSMo."

It also follows § 94.520, which provides, in part:

"The ordinance imposing the city sales tax under the provisions of sections 94.500 to 94.570 shall impose upon all sellers a tax for the privilege of engaging in the business of selling tangible personal property or rendering taxable services at retail to the extent and in the manner provided in sections 144.010 to 144.510, RSMo, and the rules and regulations of the director of revenue issued pursuant thereto; * * *."

Appellant argues that, under the Sales Tax Law, the tax is exacted from both the purchaser and the seller; therefore, a taxable transaction "within Jefferson City" occurs only when "both the purchaser and the seller [are] within the city when the taxable event occurs, i. e., the transfer of the title or ownership of the property sold from the seller to the buyer."

Respondents assert that the tax in question is imposed upon retailers for the privilege of doing business in Jefferson City, and that the legislature had the right to and did fix the situs of transactions the receipts from which were to be included in the gross receipts by which the tax is measured. Specifically, respondents rely upon § 94.540 5., of the City Sales Tax Act, which provides:

"5. For the purposes of a sales tax imposed by an ordinance pursuant to sections

94.500 to 94.570, all retail sales shall be deemed to be consummated at the place of business of the retailer unless the tangible personal property sold is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination. In the event a retailer has more than one place of business in this state which participates in the sale, the sale shall be deemed to be consummated at the place of business of the retailer where the initial order for the tangible personal property is taken, even though the order must be forwarded elsewhere for acceptance, approval of credit, shipment or billing. A sale by a retailer's employee shall be deemed to be consummated at the place of business from which he works."

The meaning and effect of this provision is the essential question presented by this litigation.

This provision appears to have originated in a 1955 California enactment known as the "Bradley-Burns Uniform Local Sales and Use Tax Law." Stats., 1955, chap. 1311, p. 2381. The act as it presently stands is found in West's Revenue and Taxation Code, Div. 2, Part 1.5, §§ 7200–7209. It authorizes counties and cities to adopt sales and use taxes identical, with certain exceptions, to the state sales and use tax act. County tax at a rate of 1–1/4% is authorized, with a city tax of 1%, and with credit for the city tax to be applied against the county tax. § 7205 of the act, as originally adopted, provided, in part:

"All retail sales for the purpose of this part shall be presumed to have been consummated at the place of business of the retailer unless the tangible personal property sold is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination."

By a 1961 amendment, the language "shall be presumed to have been consummated" was changed to "are consummated." Stats., 1961, chap. 1334, p. 3113, § 4.

According to an article appearing in Volume 59, West's Ann.Cal.Codes, Revenue and Taxation, p. 1, at p. 122:

"Less than six years after the enactment of the Bradley-Burns Uniform Local Sales and Use Tax Law, all counties and cities had elected to go under it by the adoption of the prescribed local sales and use tax ordinances."

Therefore, it is not cause for surprise that the question here posed does not appear to have arisen under the California law. It may be noted, however, that the California sales tax has been held to be a tax on gross receipts, "not a tax on the sale or because of the sale * * *." Livingston Rock & Gravel Co. v. De Salvo, 136 Cal.App.2d 156, 288 P.2d 317, 319[3–6] (1955). In that case, the court noted:

"In the absence of either the express or implied consent of the buyer that he will assume the burden of paying the tax, he is under no legal liability to do so." 288 P.2d 319[7, 8].

See City of Pomona v. State Board of Equalization, 53 Cal.2d 305, 1 Cal.Rptr. 489, 347 P.2d 904 (In Bank, 1959).

The Missouri sales tax was originally a gross receipts tax. Laws of Mo. 1933, Extra Session, p. 155. In 1935 (Laws of Mo. 1935, p. 411), the law was changed to impose a transaction tax with tokens employed for payment of the tax in fractional cents. Eventually, by general public action, the token system was ignored. In 1961, the General Assembly took note of the abandonment of the use of tokens and authorized payment of the tax by the purchaser according to a bracket system. Laws of Mo.1961, p. 634. The bracket system was further amended in 1963. Laws of Mo.1963, p. 195.

The nature of the sales tax, as affected by the bracket system for payment of the tax, was before the court en banc in Automagic Vendors, Inc. v. Morris, 386 S.W.2d 897 (Mo.Banc 1965), involving the 1961 amendment, and Automatic Retailers of

America, Inc. v. Morris, 386 S.W.2d 901 (Mo.Banc 1965), involving the 1963 amendment. Both cases related to the liability of a retailer to pay tax on sales of less than 25 cents, in view of the provision of the bracket system that no tax should be added on sales of less than 25 cents. § 144.285, RSMo Cum.Supp.1961; § 144.285, RSMo Cum.Supp. 1963.

Although there were minor differences between the 1961 and 1963 enactments, the court held that under both acts the sales tax was a transaction tax, and that in providing that no tax should be added to sales of less than 25 cents, the General Assembly had excused the retailer required to remit the tax to the state from the payment of tax upon receipts from sales in transactions where the purchase price was less than 25 cents.

In the Automatic Retailers case, decided February 23, 1965, the court made the following suggestion (386 S.W.2d 907[5]):

"This opinion is being filed as soon as reasonably possible after the argument of the case in this Court in order to give the legislature an opportunity to take further action, if it so desires, at the current session."

The General Assembly readily accepted this invitation with the introduction on March 2, 1965 of H.B. 523, which was adopted and became effective, with an emergency clause, July 1, 1965. Laws of Mo. 1965, p. 261. By this act, the provision of § 144.020, RSMo 1959, V.A.M.S., levying the tax upon designated transactions was changed to its present terms, to-wit:

"A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. * * *"

§ 144.021 was added. It provides:

"The purpose and intent of sections 144.-010 to 144.510 is to impose a tax upon the privilege of engaging in the business, in this state, of selling tangible personal property and those services listed in section 144.020. The primary tax burden is placed upon the seller making the taxable sales of property or service and is levied at the rate provided for in section 144.020. Excluding sections 144.070, 144.440 and 144.450, the extent to which a seller is required to collect the tax from the purchaser of the taxable property or service is governed by section 144.285 and in no way affects sections 144.080 and 144.100, which require all sellers to report to the director of revenue their 'gross receipts', defined herein to mean the aggregate amount of the sales price of all sales at retail, and remit tax at three per cent of their gross receipts."

§ 144.060, relating to the duty of the purchaser to pay the tax, was amended by the addition of the italicized language:

"It shall be the duty of every person making any purchase or receiving any service upon which a tax is imposed by sections 144.010 to 144.510 to pay, *to the extent possible under the provisions of section 144.285,* the amount of such tax to the person making such sale or rendering such service; any person who shall willfully and intentionally refuse to pay such tax shall be guilty of a misdemeanor; provided, however, that the provisions of this section shall not apply to any person making any purchase or sale of a motor vehicle subject to sales tax as provided by the Missouri sales tax law."

§ 144.080 was amended to require the retailer to collect the tax from the purchaser insofar as possible but with the provision that inability to collect the tax from the purchaser should not excuse the retailer from his obligation to pay the tax to the state. Paragraph 3 of § 144.080, as theretofore written, was deleted. It provided:

"3. The tax imposed by this chapter is a tax upon the sale, service or transaction and shall be collected by the person making the sale or rendering the service at the time of making or rendering such sale, service or transaction, provided, however, that the collection of the tax imposed by this chapter

on motor vehicles shall be made as provided for in section 144.070."

§ 144.083, requiring the retailer to obtain a license, was added, and § 144.100, relating to returns required to be made by the retailer was amended to make clear the duty of the retailer to return his gross receipts and pay the tax thereon.

The 1965 act contained the following emergency clause:

"Section 2. Emergency clause.—Because the present interpretation of the tax laws of the state is resulting in a serious loss of revenue, and because there is a vital and immediate need for additional funds to adequately finance the necessary functions and programs of state government, this act is necessary for the immediate preservation of the public peace, health and safety, and an emergency exists within the meaning of the constitution. Therefore, this act shall be in full force and effect from and after its passage and approval." Laws of Mo. 1965, p. 264.

Appellant contends that, despite the 1965 amendments, the state sales tax remains a tax imposed upon both the retailer and the purchaser; that the city sales tax law by reference incorporates the provisions of the state sales tax law which support this conclusion; that, therefore, the city sales tax is likewise imposed upon both the retailer and the purchaser, and may properly be levied only when both of such parties are within the city when the transfer of title occurs.

The appellant emphasizes the requirement of § 144.021 that the seller collect the tax from the purchaser; of § 144.060 requiring the purchaser to pay the tax to the seller, to the extent possible, and providing punishment for a misdemeanor for willful or intentional refusal to pay the tax; § 144.080, requiring the seller to collect the tax from the purchaser, and prohibiting advertising that the seller will absorb the tax, under penalty of a misdemeanor. Appellant argues that the incorporation by reference of these provisions in the City Sales Tax Act results in a tax under that act of the same nature as that imposed by the state act.

The legislative purpose in the 1965 amendments to change the state sales tax from a transaction tax to a gross receipts tax could hardly have been more clearly expressed. § 144.021 clearly states that the tax is imposed upon the privilege of selling at retail, with the "primary tax burden * * * upon the seller," who is required to remit tax at three per cent of his gross receipts. The provision of § 144.080 3. which spelled out that the prior tax was "a tax upon the sale" was repealed. The nomenclature of "sales tax" was retained, but as the court pointed out in Lawyers' Association of St. Louis v. City of St. Louis, 294 S.W.2d 676, 682 [8] (Mo.App. 1956), " * * * the name, purpose, designation or character given by the legislative body to a particular tax in the statute or ordinance imposing it is not conclusive upon the Court in determining the nature or purpose of the exaction."

The 1965 amendments did leave intact or restate the obligation of the seller to collect the tax from the purchaser and of the purchaser to pay the tax to the seller. However, the language of § 144.021 makes clear that the seller is required to pay the tax on his gross receipts and § 144.080 4. imposes such burden regardless of his inability to collect all or a part of such tax from the purchaser. No purchaser is involved in this litigation. Consequently, the nature and extent of the obligation of the purchaser to pay the city sales tax is not properly here presented. The 1965 amendments to the sales tax act created a distinct liability on the part of the seller for the tax. The determination of effect of such changes upon the nature of the purchaser's obligation and the extent to which the penal provisions of the sales tax law directed at the purchaser are effectively incorporated into the city sales tax act require the presence of a purchaser as a party litigant.

In the trial court, an effort was made belatedly to file an amended petition to join as a party plaintiff a customer of Fabick who resided outside Jefferson City and made purchases from Fabick which were delivered outside Jefferson City. The trial court refused to permit the amendment. Appellant now contends that the refusal to permit such amendment was error. There was no error of which Fabick may complain. Fabick's liability may be determined without the presence of the customer as a party. Nor does the refusal to permit the amended petition to be filed afford any basis for allowing Fabick to assert the claimed denial of constitutional right to the customer by requiring him to pay the tax to Fabick.

Even if the contention sought to be advanced on behalf of the purchaser should be upheld, Fabick would be confronted with the provision of § 144.080 4., imposing liability on the seller without regard for the seller's ability to collect the tax from the purchaser. Furthermore such holding would not preclude the right of Fabick to contract with the purchaser with respect to the impact of the Jefferson City tax.

Appellant contends that in the case of Connecticut Light & Power Co. v. Walsh, 134 Conn. 295, 57 A.2d 128, the court held that a sales tax law containing language similar to that found in § 144.021, supra, was a tax levied on the seller and the purchaser, with the purchaser paying the tax to the seller, who then remitted it to the state. That case involved primarily a claimed exemption from a use tax by utilities who claimed that the provisions of a gross receipts tax applicable to them precluded imposition on them of the use tax. The claim was denied. A seller of property to the utilities claimed that his sales to them were exempt from the sales tax. The contention was rejected simply on the basis that no such exemption was to be found in the sales tax law. That case does not consider the nature or impact of the sales tax there involved, and is no authority insofar as the question here presented is concerned.

Insofar as the obligation of the seller as the person upon whom the primary obligation to pay the sales tax is imposed (§ 144.021, supra) is concerned, the tax imposed by the state sales tax law is a gross receipts tax. The tax authorized to be imposed by the city sales tax law is of the same nature. § 94.520, supra. No constitutional inhibition has been cited which prevents the General Assembly from selecting, for the purpose of a tax of such nature, the place of business of the seller as the situs of the transaction to be included in arriving at the basis for levy of the tax. Jurisdictional arguments based upon lack of reciprocal benefit are unavailing because the retailer is within the city imposing the tax and is the recipient of governmental services provided by the city. Kansas City v. Graybar Electric Company, Inc., 485 S.W.2d 38 (Mo.Banc 1972). No such capricious action by the General Assembly is involved as would warrant judicial interference in the determination of this basically legislative question. American Airlines, Inc. v. City of St. Louis, 368 S.W.2d 161, 164 [1] (Mo.1963).

In enacting its ordinance in the language of the authorizing statute (§ 94.510 2., supra) and imposing the tax on sales "within" Jefferson City, and in otherwise following the direction of the enabling statute, there is no reason to assume that Jefferson City exercised less than all of the authority granted it or failed to take advantage of all of the provisions of the act, including § 94.540 5. The contention that by taxing sales "within" the city, Jefferson City intended to reach only those transactions in which passage of title occurred within its limits is rejected.

Nor are cases such as Binkley Coal Co. v. Smith, 352 Mo. 627, 179 S.W.2d 17 (1944), which looked to the passage of title as limiting the jurisdiction of the state to impose its sales tax here relevant. The

1965 changes in the state sales tax law altered the nature of the tax as it had been when such cases were decided. Additionally, § 94.540 5. clearly ignores passage of title as a basis for determining whether a sale is to be included for the purpose of computing gross receipts under the city sales tax law.

■ Appellant argues that the phrase "shall be deemed to be consummated at the place of business of the retailer" creates only a rebuttable presumption that a taxable transaction has occurred there. In Miller v. Commonwealth, 172 Va. 639, 2 S. E.2d 343 (1939), in considering a statute providing that intoxicating liquor in containers not bearing government stamps shall be "deemed * * * to have been illegally acquired," the court stated (2 S.E.2d 347):

"In the absence of any word in the present statute qualifying the presumption, we will first consider the meaning of the word 'deemed.' In 18 C.J. 457, the word 'deemed' is variously construed to mean 'adjudged, judged, considered, conclusively considered, decreed, accounted, declared, presumed.' In Webster's New International Dictionary (2d Ed.), the word "deem' is defined in part as meaning 'to have an opinion, to judge, believe, suppose.'

"The word, therefore, has more than one meaning. Its meaning is often dependent upon the circumstances in connection with which it is used. Its use does not justify, in all cases, the interpretation that it signifies an arbitrary exercise of judgment; it may signify a deliberate exercise subject to other proof."

In that case, as in other cases cited by appellant, the word was held to have created only a rebuttable presumption.

Courts of this state have given a contrary meaning to the word when the context of its use so indicated. Woods v. Cantrell, 356 Mo. 194, 201 S.W.2d 311, 314 [1, 2] (1947). The context in which the term is here used calls for such interpretation of the term. The obvious purpose of this provision was to fix the taxable situs of transactions which might have a nexus with more than one municipality. A staggering administrative problem would be created if each sale were subjected to scrutiny as to the exact point of passage of title. The General Assembly intended to avoid such difficulty by determining in advance the situs of the taxable event. The contention that only a rebuttable presumption was intended is rejected.

The contention that the trial court erred in its judgment in failing to take cognizance of the exemptions provided in the sales tax law for certain transactions (§§ 144.030, 144.040, RSMo 1969, V.A.M.S.) is without merit. The only exemption relied upon in the petition on which the cause was submitted was that found in § 144.030 1., providing:

"1. There is hereby specifically exempted from the provisions of sections 144.010 to 144.510 and from the computation of the tax levied, assessed or payable under sections 144.010 to 144.510 such retail sales as may be made in commerce between this state and any other state of the United States, or between this state and any foreign country, and any retail sale which the state of Missouri is prohibited from taxing under the constitution or laws of the United States of America, and such retail sales of tangible personal property which the general assembly of the state of Missouri is prohibited from taxing or further taxing by the constitution of this state."

■ There has been no demonstration by appellant that the commerce clause of the Federal Constitution is violated by the imposition of the Jefferson City sales tax. The contention that the prohibition against a tax upon sales "in commerce between the State of Missouri and any other state" is violated is based upon the construction given that term in cases such as American Bridge Co. v. Smith, 352 Mo. 616, 179 S. W.2d 12 (1944), and Curtis Publishing Co.

v. Bates, 363 Mo. 287, 250 S.W.2d 521 (1952).

In the enactment of the city sales tax law, the General Assembly modified such exemption by the provisions of § 94.540 5., supra, in which it expressly dealt with interstate transactions. Subparagraph (2) of paragraph 1 of § 94.540, extending the exemptions of the sales tax law to the city sales tax, refers only to "exemptions granted to agencies of government, organizations, persons and to the sale of certain articles and items of tangible personal property and taxable services * * *." The exemption granted by paragraph 1 of § 144.030 is not within such reference as it applies to transactions, not to the parties thereto or subject thereof. Of course, the city sales tax cannot be applied when it would violate either state or federal constitutional provisions. However, as pointed out in the American Bridge case, the prohibition against taxing sales in commerce between Missouri and any other state does not necessarily involve constitutional limitations. Insofar as constitutional limitations are not involved, § 94.540 5., governs the application of the city sales tax, rather than § 144.030 1.

The failure of the trial court to note other exemptions provided in §§ 144.030 and 144.040 does not render its judgment erroneous. The court was considering the issues made by the petition and answer and no issue was raised as to the applicability of such exemptions and the judgment in no manner passes upon that question.

The petition did seek judgment as to the application of the city sales tax to lease transactions. The trial court's judgment was limited to sales. No amendment of such judgment was sought below. The petition did assert a controversy as to lease transactions. However, the "Guide for Determining Application of 1% City Sales Tax," issued by the Director of Revenue and attached to plaintiff's petition, shows that the director has treated sales and leases separately, with lease or rental in-come "subject to city sales tax at the location where the leased or rental property is used or installed." The trial court did not purport to pass on the lease issue and its judgment is not to be faulted on the grounds that it erroneously held that appellant was liable for the tax on all lease and rental income.

Inasmuch as the issue of the nature of the obligation between the seller and the purchaser for the city sales tax is not decided, the portion of the judgment which recites that the seller is required "to collect from all purchasers" should be deleted from the judgment. As modified the judgment is affirmed.

Judgment affirmed as modified.

HIGGINS, C., concurs.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.